# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| **KIMBERLY STARLING**, on behalf of herself and all others similarly situated, <br><br> *Plaintiff*, <br> v. <br><br> **J WALES HOME SOLUTIONS LLC** <br><br> *Defendant*. | Civil Case No.: 4:21-cv-1261 <br><br> **COMPLAINT - CLASS ACTION** |

## INTRODUCTION

1. This action arises out of Defendant, J Wales Home Solutions LLC's ("Defendant" or "J Wales"), marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and provisions of the Texas Business & Commerce Code.

2. J Wales places, or has placed on its behalf, telemarketing calls to individuals on the National Do-Not-Call Registry without prior express written consent (or any consent whatsoever).

3. These calls are part of an overall marketing campaign to sell roofing repair services and products.

4. These calls offer to schedule a complementary roofing inspection and request that if damage is found, the called party considers J Wales to do the repairs and restoration work.

5. Because J Wales knows that these calls violate the TCPA, it conceals, or instructs its telemarketers to conceal, its identity.

6. For example, if asked what company is calling, the telemarketer states that it is calling from a "Texas Preferred Roofing Contractor" or provides a fake company name, such as "JK DFW Roofing."

7.   Refusing to provide identifying information or providing fake information violates the TCPA's requirement that all telemarketing calls clearly identify the caller and the seller and provide contact information.  47 C.F.R. § 64.1200(d)(4); 47 U.S.C. § 227(c)(5).

8.   Moreover, the TCPA prohibits making any telemarketing call to a person who, like Ms. Starling, has previously asked not to receive such calls, and makes sellers like J Wales liable for calls made on their behalf in violation of the TCPA's internal do-not-call rules.

9.   Accordingly, Plaintiff brings this TCPA action on behalf of herself and four classes of similarly situated individuals under 47 U.S.C. §§ 227(c) and Texas Business & Commerce Code § 305.053.

## JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

11.   This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because it is so closely related to the federal claims that they form a single case or controversy.

12.   This Court has jurisdiction over J Wales because J Wales is headquartered in this District, conducts business transactions in this District and has committed tortious acts in this District.

13.   Venue is proper in this District because J Wales conducts significant amounts of business transactions within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

14. Plaintiff Kimberly Starling ("Starling") is, and at all times mentioned herein was, a citizen and resident of Southlake, Texas.

15. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16. Plaintiff is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

17. Defendant is, and at all times mentioned herein was, a Texas limited liability company headquartered at 4809 Century Drive, Forest Hill, Texas 76140-1529.

18. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

19. Defendant is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

## TCPA BACKGROUND

20. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

21. Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

22. These regulations are codified at 47 CFR 64.1200(c)(1-2).

23. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

24. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

25. The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

26. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

27. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

28. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

29. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

30. These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

31. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d) (1, 2, 3, 6).

32. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

33. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

34. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

35. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

36. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

37. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

38. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, including as described herein as to J Wales, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

### FACTUAL ALLEGATIONS

39. Ms. Starling is the user of a cellular telephone number ending in 6140.

40. Ms. Starling's cellular telephone number ending in 6140 is used for residential purposes.

41. Ms. Starling's telephone number ending in 6140 has been on the National Do-Not-Call Registry since December 31, 2004.

42. On May 10, 2021, at around 11:37 AM, Ms. Starling received a call on her cell phone from (469) 290-0995.

43. The caller stated that he was scheduled to be in Ms. Starling's neighborhood with some of her neighbors and would be checking rooftops for weather related damage.

44. The caller stated that he was with a "very reputable roofing company" and was a "Texas preferred contractor".

45. The caller aggressively attempted to schedule a twenty-minute meeting with Ms. Starling to inspect her roof.

46. The caller stated that if they found damage, they would request that Ms. Starling consider using their services to perform the necessary repairs to her roof.

47. When Ms. Starling asked what company was calling her, the caller refused to give the Company name, instead saying he was with a "Texas preferred roofing contractor" and a "proud member of the better business bureau" and continued to aggressively request to schedule a meeting with Ms. Starling.

48. When Ms. Starling asked where the company was located, the caller stated that the company is "here in Southlake" and "we are a local based company."

49. In order to determine the true identity of the company, Ms. Starling feigned interest and schedule an appointment for the next day.

50. On May 11, 2021, Ms. Starling had a missed call from James Winsett with J Wales.

51. Mr. Winsett left Ms. Starling a voicemail message stating that he had to reschedule the appointment to inspect her roof due to the weather.

52. Ms. Starling attempted to call Mr. Winsett back to cancel the appointment, but could not reach him.

53. Mr. Winsett eventually called Ms. Starling back, at which time, Ms. Starling cancelled the appointment, stated that she was not interested and would contact J Wales if she was interested.

54. On June 1, 2021, at around 10:23 AM, Ms. Starling received a call on her cell phone from (817) 910-3698.

55. The caller gruffly stated that he would be doing roofing inspections for homeowners and asked Ms. Starling if she would be home.

56. When Ms. Starling asked what company was calling and wanted to perform an inspection, the caller stated he was with JKDFW Roofing and was a "licensed, bonded and insured family owned and operated company."

57. Upon information and belief, "JKDFW Roofing" is not a real company and is used by J Wales and/or its telemarketers to conceal its illegal activity.

58. In order to determine the true identity of the company, Ms. Starling feigned interest and scheduled an appointment.

59. James Winsett and Brandon Coomer from J Wales came to Ms. Starling's home and offered to inspect her roof and provided her with information that revealed that they were in fact agents of J Wales.

60. Ms. Starling advised them that she was not interested and no roofing inspection

occurred.

61. Ms. Starling did not provide prior express invitation or permission or consent for these calls. To the contrary, she told J Wales that she was not interested and stated that she would contact J Wales if she changed her mind.

62. The TCPA's requirement that telemarketers (a) identify themselves, (b) identify the name of the person or entity on whose behalf the calls are being made, and (c) provide a telephone number or address at which the person or entity may be contacted is material.

63. Absent identifying information being provided in the beginning of calls, the called parties have no idea who is really calling them, or why.

64. Telemarketers or "lead generators" often intentionally refuse to say who they are, and delay identifying themselves until further into the call because they want to avoid accountability for their illegal marketing practices.

65. Failure and/or refusal to identify oneself or those on whose behalf calls are made during a telemarketing call is a substantial and material violation of the recipient's privacy rights.

66. Failure and/or refusal to identify oneself or those on whose behalf calls are made during a telemarketing call also allows companies like J Wales to avoid accountability for their own bad acts, and the bad acts of their vendors and agents.

67. J Wales' agents, or those otherwise making calls on J Wales' behalf, did not have written do-not-call policies or procedures at the time of the calls to Plaintiff and the classes defined below. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the second call to Ms. Starling after she directly asked not to be contacted.

68. During all relevant times, J Wales maintained the power and right of interim control over its agents' and caller's actions with respect to the telemarketing complained of herein.

69. J Wales gave its agents and their vendors, including those to whom Ms. Starling spoke with as a result of the calling at issue, access to its calendar and scheduling so that it could schedule appointments for J Wales.

70. Ms. Starling and other class members reasonably believed that the caller that called them had J Wales' authority for the calls at issue, based on J Wales own actions—providing compensation for business derived from such calls, providing agents with access to its calendar and employee schedules to schedule appointments, and by retaining revenue when consumers purchased roofing services as a result of such calling.

71. J Wales knew that its agents or their vendors were telemarketing on its behalf regardless of consumer do-not-call requests, and without having instituted proper procedures to stop calls to consumers who ask not to be contacted, yet it did nothing to prevent or stop the calling at issue.

72. J Wales' actions and omissions with regard to the telemarketing complained of herein justify a reasonable assumption that it consented to the telemarketing at issue.

73. J Wales knowingly accepted the benefits that originated through the nonconsensual telemarketing at issue. J Wales knowingly compensated its agents (and/or their telemarketing vendors) for such, J Wales accepted the advertising benefit in having its roofing services solicited to Ms. Starling and other class members, and it further benefitted by retaining money paid by call recipients for the roofing services purchased as a result of the illegal calling at issue on an ongoing basis, thereby ratifying such calls.

74. Alternatively, to the extent J Wales claims it lacked full knowledge about every

aspect of the telemarking-based lead generation performed on its behalf, it failed to investigate further despite knowledge that would have caused a reasonable person to do so.

75. J Wales violations were negligent. Alternatively, they were willful and knowing.

76. Ms. Starling and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, the J Wales calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. The calls were annoying and a nuisance, and wasted the time of Ms. Starling and the classes. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## **DEFENDANT'S LIABILITY**

77. J Wales placed two or more telephone solicitations to Ms. Starling, whose number was on the National Do-Not-Call Registry at the time of the calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

78. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Starling is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

79. Ms. Starling is entitled to an additional $1,500 per call if J Wales' actions are found to be knowing or willful.

80. J Wales placed two or more telemarketing calls to Ms. Starling, despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

81. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Starling is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

82. Ms. Starling is entitled to an additional $1,500 per call if J Wales' actions are found

to be knowing or willful.

83. In addition, pursuant to § 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both.

84. As set forth above, J Wales violated 47 U.S.C. § 227, or a regulation adopted under that provision.

85. Accordingly, Ms. Starling is entitled to a permanent injunction, and the greater of $500.00 for each violation or Ms. Starling's actual damages for each call made by J Wales. *See* Tex. Bus. & Com. Code § 305.053(b).

86. Plaintiff is entitled to an additional $1500 per call if J Wales' actions are found to be knowing or intentional. *See* Tex. Bus. & Com. Code § 305.053(c).

## CLASS ACTION ALLEGATIONS

87. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two categories of proposed "Classes," the "TCPA Classes" and the "Texas Class" as defined as follows:

### THE TCPA CLASSES

Since November 12, 2017, Plaintiff and all persons within the United States to whose telephone number Defendant J Wales placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry at the time of the calls.

("Registry Class")

Since November 12, 2017, Plaintiff and all persons within the United States whose telephone number Defendant J Wales placed (or had placed on its behalf) two or more telemarketing calls or messages in a 12-month period.

("Policy Class")

**TEXAS CLASS**

Since November 12, 2017, Plaintiff and all residents of the State of Texas to whose telephone number J Wales: (1) placed (or had placed on its behalf) a call in violation of 47 U.S.C. § 227.

("Texas § 305.053 Class")

(The TCPA Classes and the Texas Class are collectively referred to herein as the "Classes.")

88. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

89. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

90. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

    a. The time period(s) during which Defendant placed its calls;

    b. The telephone numbers to which Defendant placed its calls;

    c. The telephone numbers for which Defendant had prior express written consent;

    d. The purposes of such calls; and

    e. The names and addresses of Class members.

91. The Classes are comprised of hundreds, if not thousands, of individuals.

92. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

a. Whether Defendant (or someone acting on its behalf) places telemarketing calls;

b. Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

c. Whether Defendant or the entity with which it contracts places solicitation calls to telephone numbers registered on the National Do-Not-Call Registry;

d. Whether Defendant had the required policies and procedures prior to making telemarketing calls;

e. Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and

f. Whether Defendant should be enjoined from engaging in such conduct in the future.

93. Plaintiff is a member of the Classes in that Defendant placed two or more calls for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, after she asked Defendant to stop, and while her telephone number was on the National Do-Not-Call Registry.

94. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

95. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

96. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

97. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

98. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

99. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

100. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

101. Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the TCPA 227(c) Class)

102. Plaintiff and the proposed Registry Class incorporate the foregoing allegations as if fully set forth herein.

103. Defendant made, or had made on its behalf, telephone calls constituting telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

104. Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

105. Plaintiff and putative Registry Class Members each received two or more such calls in a 12-month period.

106. Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

107. Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Policy Class)**

108. Plaintiff and the proposed Policy Class incorporate the foregoing allegations as if fully set forth herein.

109. Defendant placed numerous calls for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers.

110. Defendant did so despite not having a written policy pertaining to "do not call" requests.

111. Defendant did so despite not having such a policy available "upon demand."

112. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

113. Defendant did so despite not recording or honoring "do not call" requests.

114. Defendant did so without complying with the identification and disclosure requirements. 47 C.F.R. § 64.1200(d)(4).

115. Defendant placed two or more telemarketing telephone calls to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

116. Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

117. Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION
### Violations of Texas § 305.053 Class
### (On Behalf of Plaintiff and the Texas § 305.053 Class)

118. Plaintiff and the proposed Texas § 305.053 Class incorporate the foregoing allegations as if fully set forth herein.

119. Defendant placed, or had placed on its behalf, telemarketing telephone calls to Plaintiff's and Texas § 305.053 Class Members' telephone numbers.

120. Each of these calls violated 47 U.S.C. § 227.

121. Plaintiff and Texas § 305.053 Class Members are entitled to:

  a. a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305;

  b. the greater of $500 for each violation or Plaintiff's and Texas § 305.053 Class Members' actual damages (*see* Tex. Bus. & Com. Code §304.053(b);

  c. the greater of $1,500 for each violation or Plaintiff's and Texas § 305.053 Class Members' actual damages for each call made knowingly or intentionally (*see* Tex. Bus. & Com. Code §304.053(c).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

  A. An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing their counsel as Class Counsel;

  B. An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227(b);

  C. An award of injunctive and other equitable relief as necessary to protect the

interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

      D.      An award of statutory damages;

      E.      An award of treble damages; and

      F.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,      By:   */s/ Chris R. Miltenberger*
      Chris R. Miltenberger
      Texas Bar Number: 14171200

**The Law Office of Chris R. Miltenberger, PLLC**
1360 N. White Chapel, Suite 200
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Max S. Morgan, Esquire
Eric H. Weitz, Esquire
THE WEITZ FIRM, LLC
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com
(Pro Hac Vice Forthcoming)

**Attorneys for Plaintiff**